3

J. RUSSELL CUNNINGHAM, State Bar #130578
J. LUKE HENDRIX, State Bar #271424
GABRIEL P. HERRERA, State Bar #287093
NABEEL ZUBERI, State Bar # 294600
DESMOND, NOLAN, LIVAICH & CUNNINGHAM
1830 15th Street
Sacramento, California 95811
Telephone: (916) 443-2051
Facsimile: (916) 443-2651

Attorneys for Sheri L. Carello
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>GRAIL SEMICONDUCTOR, a California corporation,<br><br>Debtor. | Case No.: 15-29890-D-7<br>Chapter 7 |
| Sheri L. Carello, in her capacity as Trustee for the Bankruptcy Estate of Grail Semiconductor, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD STERN, BILLIONAIRE HOPE INTERNATIONAL, LTD., MOM OS, LLC, FRANK BAUDER, THE HONGKONG AND SHANGHAI BANKING CORPORATION LTD.,<br><br>Defendants. | Adversary No. 16-02088<br><br>DNL-2<br><br>Date:   June 15, 2016<br>Time:  10:00 a.m.<br>Place:  501 I Street, 6th Floor<br>          Courtroom 34<br>          Sacramento, CA 95814 |

1

# DECLARATION OF SHERI L. CARELLO IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

I, Sheri L. Carello, declare that:

1. I am the duly appointed Chapter 7 trustee for the above-captioned bankruptcy estate commenced by GRAIL SEMICONDUCTOR, a California corporation ("Debtor"). If called as a witness, I could and would competently testify to the matters set forth in this declaration from my own personal knowledge, unless otherwise stated.

2. By the underlying ex parte application, I seek a right to attach order and writ of attachment that attaches to DONALD STERN'S ("Stern") and BILLIONAIRE HOPE INTERNATIONAL, LTD.'S ("BHI") account in the amount of $2.75 million with THE HONGKONG AND SHANGHAI BANKING CORPORATION LTD. ("HSBC").

3. I understand that in January 2000, the Debtor was incorporated by cousins Stern and Robert Stern as a startup company in order to market new technology in memory chip design invented by Stern.

4. I also understand that in an effort to produce the technology, the Debtor and Stern met with two representatives of Mitsubishi Electric & Electronics USA, Inc. ("Mitsubishi") along with representatives of Global Alliance and Asia Star Ventures. I am aware that during the meeting, Stern provided a presentation, the information of which was protected by a nondisclosure agreement.

5. I understand that the Debtor's and Stern's efforts did not culminate in any outside investment or product development. Through my investigation, I have learned that a dispute arose between the Debtor and Mitsubishi after Stern learned of a joint venture, involving the parent company of Mitsubishi, that he believed was incorporating the Debtor's technology in violation of the nondisclosure agreement. I also learned that the dispute resulted in the Debtor suing Mitsubishi commencing *Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.*, Case No. 1-07-CV-098590 (Sup. Ct. Cal., Santa Clara Cty.). A copy of the Court of Appeals decision identifying the facts surrounding the State Court Case is filed herewith as **Exhibit D**.

6. I understand that after the Debtor obtained a jury verdict that was set aside by the trial

court and the trial court's decision affirmed on appeal, the Debtor and Mitsubishi participated in a mediation that occurred on the eve of retrial. I also understand that during the mediation, the Debtor and Mitsubishi entered into a settlement agreement that provided a $55 million payment to the Debtor ("Settlement Funds").

7. I have learned that without board approval, while the Debtor was insolvent, and at Stern's direction, approximately $2.75 million ("Transferred Funds") was posted to an account held by Stern and BHI, a sham company of Stern organized under the laws of the British Virgin Islands. A copy of the October 14, 2015 board minutes evidencing that the transfer was without board approval is filed herewith as **Exhibit A**. In addition, copies of letters dated October 20, 2015 and October 29, 2015 sent on behalf of the Debtor requesting the funds be returned are filed herewith as **Exhibit B** and **Exhibit C**, respectively.

8. The Transferred Funds were monies taken directly from the Settlement Funds and deposited into an account held with HSBC. Portions of the Transferred Funds were transferred by Stern to Frank Bauder ("Bauder") in the amount of $250,000 and MOM OS LLC ("MOM OS") in the amount of $400,000. The transfers were discovered after HSBC notified Brad Woods ("Woods") of the transfers and that a large portion of the Transferred Fund were being transferred out of the account. A copy of the correspondence between HSBC and Woods evidencing the transfers is filed herewith as **Exhibit E**.

9. On May 4, 2016, I commenced the above-captioned adversary proceeding against, among others, BHI and Stern alleging causes of action that included requests for avoidance and recovery of fraudulent transfers pursuant to California Civil Code Sections 3439.04 & 3439.05 and 11 U.S.C. Sections 544 and 550.

10. In conjunction with this application, I anticipate filing DNL-1, my ex parte application for a temporary protective order. I also anticipate filing DNL-3 in the parent bankruptcy case, my application to employ Mayer Brown JSM ("Special Counsel") as the estate's Hong Kong

///
///
///

special counsel to assist with recovering the Transferred Funds and enforcing any order issued by the Court.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed this 12 day of May, 2016 at Sacramento, California.

_____
SHERI L. CARELLO

4